UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

|  |  |  |
|---|---|---|
| YOUSTAKE, INC., <br> and <br> FRANK DEGEORGE <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES <br> SECURITIES AND EXCHANGE <br> COMMISSION and <br> JAY CLAYTON, in his official <br> capacity as Chairman of the <br> United States Securities and <br> Exchange Commission, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CASE NO: 5:17-cv-00065 |

### SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM
### OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

### PRELIMINARY STATEMENT

The United States Securities and Exchange Commission ("SEC") is conducting an ongoing investigation to determine whether Plaintiffs' business activities violate the federal securities laws. Plaintiffs' Complaint under the Declaratory Judgment Act against the SEC and the SEC's Chairman in his official capacity alleges that the SEC has been conducting an investigation of their online sports staking business for about a year and four months. *See, e.g.*, Dkt. No. 1; Compl. at ¶ 20. Plaintiffs allege that the SEC's continuing investigation shows that the SEC has been unable to identify a violation of the federal securities laws. Compl. at ¶¶ 25-26.

Plaintiffs contend that "the SEC is unwilling to close the matter despite the clear absence of any violative behavior." Compl. at ¶ 26.

Even accepting Plaintiffs' allegations as true for purposes of this motion, *see Waterford Citizens' Ass'n v. Reilly,* 970 F.2d 1287, 1290 (4th Cir. 1992), the Court lacks jurisdiction over their claim because there is no waiver of sovereign immunity permitting their claim to proceed. The federal courts, including the Fourth Circuit, have recognized that challenges to an ongoing agency inquiry typically are barred by sovereign immunity. Furthermore, Plaintiffs could not amend to rectify the lack of sovereign immunity by pointing to the APA's limited waiver of sovereign immunity for claims seeking non-monetary relief because Plaintiffs' cannot satisfy the fundamental requirements of the APA. In addition, Plaintiffs' claim is not ripe for review because the SEC has not instituted an action against them or threatened any sanction that is not subject to judicial review. Accordingly, Plaintiffs' claim should be dismissed under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, under Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

I. **THE SEC HAS THE STATUTORY AUTHORITY TO INVESTIGATE WHETHER TRANSACTIONS FALL WITHIN ITS JURISDICTION AND/OR VIOLATE THE FEDERAL SECURITIES LAWS**

In the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"), Congress made clear that the initiation and conduct of investigations of potential violations of the federal securities laws have been entrusted to the "discretion" of the SEC. *See*, *e.g.*, Securities Act, Section 20, 15 U.S.C. § 77t(a) ("the Commission * * * may, in its discretion * * * investigat[e]" possible violations of the securities laws); Exchange Act, Section 21(a), 15 U.S.C. § 78u(a), entitled "Authority and discretion of Commission to investigate

2

Case 5:17-cv-00065-MFU   Document 5-1   Filed 09/12/17   Page 2 of 17   Pageid#: 28

violations" ("The Commission may, in its discretion, make such investigations as it deems necessary to determine whether" the securities laws have been violated); Exchange Act, Section 21(b), 15 U.S.C. § 78u(b) (authorizing the issuance of subpoenas). *see also SEC v. Jerry T. O'Brien*, *Inc.*, 467 U.S. 735, 745 (1984) ("Congress intended to vest the SEC with considerable discretion in determining when and how to [enforce] possible violations of the statutes administered by the Commission"). The SEC "'can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1030 (D.C. Cir. 1978) (quoting *United States v. Morton Salt Co.,* 338 U.S. 632, 642-43 (1950)). The SEC's regulations also recognize that the SEC "may, in its discretion, make such formal investigations and authorize the use of process as it deems necessary to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws." 17 C.F.R. § 202.5(a).

During an investigation, members of the staff designated as officers of the Commission for the purposes of the investigation may, among other things, issue subpoenas for documents and testimony. *See, e.g.,* 17 C.F.R. §§ 200.30-4(a)(1) and 202.5(a). SEC staff may invoke the aid of a United States District Court to enforce compliance with an SEC subpoena when the recipient fails to obey the subpoena. 15 U.S.C. § 78u(c). Once the SEC has initiated such a proceeding, the party contesting subpoena enforcement may use the proceeding to challenge the SEC subpoena and investigation. *Sprecher v. Graber*, 716 F.2d 968, 974-75 (2d Cir. 1983).

Following an investigation, if the SEC staff believes an enforcement action may be warranted, the staff presents its recommendation to the SEC's Chairman and Commissioners so that they can determine whether to authorize the filing of an enforcement action or accept an

offer of settlement. *See* 17 C.F.R. § 202.5(b). The SEC may elect to bring a civil enforcement action in district court or may institute an administrative proceeding to obtain appropriate relief. *See* Exchange Act, Sections 21(d), 21B and 21C, 15 U.S.C. §§ 78u(d), 78u-2, 78u-3; Securities Act, Sections 20(b) and 8A, 15 U.S.C. §§ 77t(b), 77h-1.

In instances where the staff has concluded its investigation of a matter and determined not to recommend an enforcement proceeding, the staff, in its discretion, may advise the party that its formal investigation has been terminated. *See* 17 C.F.R. § 202.5(d).

## II. THE SEC'S ONGOING INVESTIGATION INVOLVING PLAINTIFFS' STAKING TRANSACTIONS

Plaintiffs commenced operation of an online gaming and sports staking platform in 2015. *See* Compl. at ¶¶ 9-19.[1] YouStake's business involves creating an online platform that matches players interested in participating in a contest with monetary awards with members of the public willing to stake all or a portion of the player's entry fee to participate in the contest ("backers"). Compl. at ¶¶ 9-13. A player agrees to give the backers an interest in the outcome of the contest by paying a pre-defined percentage of the player's winnings. Compl. at ¶¶ 12-14.

The SEC's Enforcement Division initiated a formal investigation of Plaintiffs' staking transactions to determine whether they violated the federal securities laws. Compl. at ¶ 23. On April 12, 2016, the SEC issued document subpoenas to the Plaintiffs. Compl. at ¶ 20. Plaintiffs complied with the SEC subpoenas by producing responsive records. Compl. at ¶ 21. On March 28, 2017, Plaintiff DeGeorge provided investigative testimony pursuant to another SEC subpoena. Compl. at ¶ 22.

---

[1] The facts regarding the SEC's investigation are taken from the Complaint, Dkt. No. 1.

4

Plaintiffs allege that during the investigation, they "temporarily ceased the provision of public staking services, so as to demonstrate good faith cooperation with the SEC's investigative and enforcement efforts, as well as in hopes of encouraging the SEC to engage [in] substantive settlement discussions." Compl. at ¶ 24. They do not allege that the SEC instructed them to stop providing staking services.

On May 3, 2017, while the Division of Enforcement's investigation was pending, Plaintiffs' counsel wrote to the SEC's Division of Corporation Finance, which is responsible for administering matters related to securities being offered for public sale pursuant to the registration requirements of the Securities Act or the exemptions therefrom. Plaintiffs requested "assurances that the staff of the SEC would not recommend enforcement action to the SEC against YouStake or its personnel" under the federal securities laws "if YouStake engages in staking activity" (a "No-Action Letter").[2] Compl. at ¶ 36. The Division of Corporation Finance has not issued a No-Action Letter in response to Plaintiffs' request. Compl. at ¶ 37.[3]

## III. PLAINTIFFS' COMPLAINT AGAINST THE SEC

Plaintiffs claim that the SEC's continuing investigation shows that the SEC has been unable to identify a violation of the federal securities laws. Compl. at ¶¶ 25-26. They allege that the SEC is simply unwilling to close its investigation despite failing to develop evidence of their

---

[2] A No-Action Letter is an informal staff response and does not constitute an official statement of the SEC's views. *See* 17 C.F.R. § 202.1(d). "No-Action Letters are deemed interpretive because they do not impose or fix a legal relationship upon any of the parties." *New York City Employers' Retirement System v. SEC*, 45 F.3d 7, 12 (2d Cir. 1995).

[3] Plaintiffs also allege that in early 2017, they attempted to register as a crowdfunding portal with the Financial Industry Regulatory Association ("FINRA"), the private self-regulatory organization that regulates member brokerage firms and exchange markets. Compl. at ¶ 29. Plaintiffs' counsel claims that he spoke with a FINRA examiner, who opined, on behalf of FINRA, that Plaintiffs' staking activities did not involve the sale of securities and were not subject to FINRA's oversight of crowdfunding portals. Compl. ¶¶ at 33-34. Plaintiffs do not allege that the statements of the FINRA examiner would prevent the SEC from determining that Plaintiffs' activities involve the offer and sale of securities and are subject to SEC regulation.

5

misconduct. Compl. at ¶ 26. Plaintiffs insist that, by continuing its investigation, the SEC is illegitimately "promulgating a posture that [the SEC] believes staking to involve the sale of an actual security and that it further believes such security to be regulated by the SEC under its existing regulatory framework." Compl. at ¶ 53. Plaintiffs ask the Court to intervene and determine, as a matter of law, that: (1) staking does not involve the sale of securities; (2) staking is not a security regulated under the Securities Act and Exchange Act; (3) the staking process does not involve the sale of any securities currently regulated by the SEC; or (4) Plaintiff YouStake is exempt from the Securities Act's registration requirements under Regulation D (enabling issuers to offer and sell securities without having to register the securities with the SEC), *see* 17 C.F.R. § 230.501 et seq.).

## ARGUMENT

Plaintiffs' claim against the SEC must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction because their claim is barred by sovereign immunity and is not ripe for review or, in the alternative under Federal Rule of Civil Procedure 12(b)(6).

### I. SOVEREIGN IMMUNITY BARS PLAINTIFFS' CLAIM

The United States has sovereign immunity from suits absent an express waiver. *United States v. Sherwood,* 312 U.S. 584, 586 (1941); *Welch v. United States*, 409 F.3d 646, 650-51 (4th Cir. 2005). Waivers of sovereign immunity must be "expressed in unequivocal statutory text and cannot be implied" and "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena,* 518 U.S. 187, 192 (1996). Without a specific waiver of sovereign immunity as to a particular claim against the Government, a court lacks subject matter jurisdiction over the suit. *See FDIC. v. Meyer*, 510 U.S. 471, 475-76 (1994); *Williams v. United*

*States*, 50 F.3d 299, 304 (4th Cir. 1995). "[T]he party who sues the United States bears the burden of pointing to * * * an unequivocal waiver of immunity." *Williams*, 50 F.3d at 304 (quoting *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983)). The doctrine of sovereign immunity applies to suits naming agencies and officers of the United States as defendants because those suits are deemed to be actions against the United States. *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963); *Food Town Stores, Inc. v. E.E.O.C.*, 708 F.2d 920, 922 (4th Cir. 1983), *cert. denied*, 465 U.S. 1005 (1984).

Plaintiffs cannot meet this burden as neither of the statutes they rely upon, 28 U.S.C. § 1331 (the federal question statute) and 28 U.S.C. § 2201 (the Declaratory Judgment Act), waives the SEC's sovereign immunity in the circumstances present here.

### A. Neither the Federal Question Statute nor the Declaratory Judgment Act Waives Sovereign Immunity

It is axiomatic that 28 U.S.C. § 1331, by itself, "is not a general waiver of sovereign immunity. It merely establishes subject matter that is within the competence of the federal courts to entertain." *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996) (quoting *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 4 (1st Cir. 1989)); *Arvanis v. Noslo Engineering Consultants, Inc.*, 739 F.2d 1287, 1290 (7th Cir. 1984), *cert. denied*, 469 U.S. 1191 (1985) ("No citation is needed to reject appellants' suggestion that 28 U.S.C. § 1331 waives sovereign immunity").

It also is clear that the Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an independent grant of jurisdiction or waive the government's sovereign immunity. *Skelly Oil v. Phillips Petroleum*, 339 U.S. 667, 671 (1950); *City Nat'l Bank v. Edminsten*, 681 F.2d 942, 945 n. 6 (4th Cir. 1982) (the Declaratory Judgment Act is "remedial only, and is not itself a basis for

7

federal subject matter jurisdiction"); *Delavigne v. Delavigne*, 530 F.2d 598, 601 (4th Cir. 1976) ("It is axiomatic that the Act does not supply its own jurisdictional base, and where jurisdiction is lacking, declaratory relief should be denied").

### B. The Waiver of Sovereign Immunity in the Administrative Procedure Act Does Not Apply to Plaintiffs' Claim

In cases seeking relief other than money damages, plaintiffs typically rely on the APA's limited waiver of sovereign immunity in 5 U.S.C. § 702. Plaintiffs, however, failed to refer to the APA in the Complaint, and, even if they had, the APA's limited waiver of sovereign immunity does not apply to their claim. Section 702 provides that the waiver of immunity does not affect other limitations on judicial review, and provisions of the APA limiting judicial review preclude a waiver of sovereign immunity in this case.

Under Section 704 of the APA, courts may only review those actions that are made reviewable by statute or which are final and for which there is no adequate remedy in a court. 5 U.S.C. § 704. The APA waives sovereign immunity only for claims that meet the requirements of both sections 702 and 704 of the APA. *See South Carolina v. United States*, 221 F. Supp. 3d 684, 693 (D.S.C. 2016) ("A waiver of sovereign immunity * * * is available when a party satisfies the requirements of both § 702 and § 704 of the APA.").

Furthermore, Section 701(a) of the APA renders Section 702's waiver of sovereign immunity inapplicable when a statute precludes judicial review, or when the particular agency action being challenged is committed to agency discretion by statute. 5 U.S.C. § 701(a)(1) and (a)(2). *Graber*, 716 F.2d at 974. Those principles apply here.

8

### 1. Plaintiffs' claim does not fall within Section 704

Because Plaintiffs do not and cannot identify a statute that provides for judicial review of an ongoing SEC investigation to satisfy Section 704, they must identify a "final agency action for which there is no adequate remedy in a court." *Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA*, 313 F.3d 852, 857 (4th Cir. 2002) ("Other than an agency action made specifically reviewable by statute, § 704 limits the APA's non-statutory right of judicial review to final agency action"). Finality is a threshold question that determines whether judicial review is available. *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir 2006). An "[a]gency action is final where it both marks 'the consummation of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature,' *and* is 'one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Children's Hospital of King's Daughters, Inc., v. Price*, No. 2:17CV139, 2017 WL 2936801 at *6 (E.D. Va. June 20, 2017) (emphasis added) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). Plaintiffs cannot satisfy that requirement.

An SEC investigation is not the consummation of the agency's administrative process, and it does not determine any rights or obligations. *See FTC v. Standard Oil of California*, 449 U.S. 232, 242-44 (1980). Ample authority supports that investigating and gathering evidence are not "final agency actions." *See Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir.1994) ("An agency's initiation of an investigation does not constitute final agency action."); *Reliable Automatic Sprinkler Co., Inc. v. Consumer Product Safety Comm'n*, 324 F.3d 726, 731-32 (D.C. Cir. 2003) (affirming dismissal of suit seeking declaratory judgment that agency lacked statutory authority to regulate product because agency's pre-enforcement investigation was not final

9

agency action); *Lone Star Coll. Sys. v. EEOC,* 2015 WL 1120272, at *5 (S.D. Tex. Mar. 12, 2015) ("issuance of a subpoena is not final agency action subject to judicial review").[4]

Because Plaintiffs cannot satisfy fundamental requirements under Section 704 for seeking relief under the APA, there is no waiver of sovereign immunity under the APA in these circumstances.

### 2. Plaintiffs' claim does not satisfy Section 701(a)

The APA also does not waive immunity when statutes preclude judicial review or an agency action is committed to agency discretion by law. *See* 5 U.S.C. § 701(a)(1) and (a)(2). Section 701(a)'s exceptions to the limited waiver of sovereign immunity apply to challenges to SEC investigations. *Graber*, 716 F.2d at 974; *Treats Int'l Enterprises, Inc. v. SEC*, 828 F. Supp. 16, 17 (S.D.N.Y. 1993). Plaintiffs' claim comes within both of Section 701(a)'s exceptions because the SEC's statutory scheme precludes judicial review and the decision to investigate is committed to agency discretion by law.

A statute precludes judicial review if it "'provides a form of relief which is expressly or impliedly exclusive.'" *Graber*, 716 F.2d at 974 (quoting H.R. No. 94-1656, p. 3, 94th Cong.2d Sess., *reprinted in* U.S. Code Cong. & Ad. News 6121, 6123) (1976)). During an SEC investigation, a contested subpoena enforcement proceeding under Section 21 of the Exchange Act, 15 U.S.C. § 78u(c), provides the exclusive avenue of redress for actions like this one challenging the propriety of the investigation. *Graber*, 716 F.2d at 974-75; *Treats* 828 F. Supp. at

---

[4] If the SEC decides to bring an Enforcement action against Plaintiffs, that decision will not be reviewable under the APA because Plaintiffs will have an adequate remedy at law. *See State of Georgia v. City of Chattanooga*, 264 U.S. 472, 483-84 (1924) (a party's ability to assert its claims as a defense in another proceeding constitutes an adequate remedy at law); *First Jersey Securities, Inc. v. SEC*, 553 F. Supp. 205 (D.N.J. 1982) (dismissing complaint seeking to enjoin filing of an enforcement action because plaintiffs have an adequate remedy at law in an enforcement action).

10

17-19. In this case, Plaintiffs complied with the SEC's subpoenas and consequently did not avail themselves of the opportunity to challenge the SEC's investigation in a proceeding under Section 21. *Sprecher v Von Stein*, 772 F.2d 16, 18 (2d Cir. 1985) ("The exclusive method for testing the validity of the SEC's investigatory motives or methods is a contested subpoena enforcement proceeding * * * which appellant waived by voluntarily answering the only subpoena ever addressed to him in the inquiry"); *Treats*, 828 F. Supp. at 17-18 (same). Because Plaintiffs could have challenged the SEC's investigation by declining to respond to their subpoenas, judicial review under the APA is precluded.

In addition, review under the APA is not available because the decision to investigate is committed to agency discretion. Section 21(a) of the Exchange Act, 15 U.S.C. 78u(a), empowers the SEC to "make such investigations as it deems necessary" to determine whether a violation of the securities laws exists and emphasizes that SEC investigations are authorized "in its discretion." S*ee Graber*, 716 F.2d at 975 (holding that action challenging SEC investigation was barred by sovereign immunity because it alleged actions that were "either committed to the SEC's discretion or * * * subject to a statutory provision which provides the exclusive relief available"). Section 21(a) "suggests no standards by which the SEC's discretion to investigate * * * might be reviewed" and the statute's legislative history showed Congress vested the SEC with broad powers to investigate in support of SEC's statutory mandate. *Treats*, 828 F. Supp. at 18.

Accordingly, Section 701(a) bars Plaintiffs' challenge to the SEC's investigation.

11

Case 5:17-cv-00065-MFU   Document 5-1   Filed 09/12/17   Page 11 of 17   Pageid#: 37

## II. PLAINTIFFS' CLAIM IS NOT RIPE

This Court also lacks jurisdiction over this matter because Plaintiffs' claim is not ripe. The ripeness doctrine and the doctrine of finality are analytically distinct, although courts sometimes commingle them. *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 745-46 (D.C. Cir. 1987) (opinion of Williams, J.). Finality looks to the conclusion of activity by the agency; that is, whether an administrative act imposes an obligation, denies a right or fixes a legal relationship as the consummation of the administrative process. *Id.* at 746 (internal quotation marks omitted) (quoting *Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.*, 333 U.S. 103, 113 (1948)). The ripeness doctrine, by contrast, focuses on the fitness of issues for judicial review. *Id.* Ripeness concerns institutional relationships between courts and agencies, including "the agency's interest in crystallizing its policy before the policy is subject to judicial review" and "the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting." *Id.* at 735 (opinion of Edwards, J.) (quoting *Better Gov't Ass'n v. Department of State*, 780 F.2d 86, 92 (D.C. Cir. 1986)).

Courts do not have subject-matter jurisdiction over claims that are not ripe for review. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 548 (4th Cir. 2013); *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) ("A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'"), *reh'g en banc denied*, 720 F.3d 212 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 1538 (2014). "[I]n the context of an administrative case, there must be an administrative decision [that] has been formalized and its effects felt in a concrete way by the challenging parties." *Charter Fed. Sav.*

*Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992). The party bringing the suit bears the burden of proving ripeness. *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006).

Plaintiffs' challenge to the SEC's ongoing investigation is not ripe, as it is premature for the Court to consider the merits of any possible action the SEC may bring. When reviewing a claim for ripeness, a court must evaluate: (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Charter Federal*, 976 F.2d at 208-209; *see also Pernix Grp., Inc. v. United States*, 121 Fed. Cl. 592, 598 (2015) (the ripeness doctrine exists "'to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way'" (quoting *Abbott Labs.v. Gardner*, 387 U.S. 136, 148-49 (1967) overruled on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977)). Plaintiffs' claim does not satisfy either prong of the ripeness test.

### A. Plaintiffs' Claim Is Not "Fit" For Adjudication Because It Does Not Allege Final Agency Action

To meet the "fitness" prong of the ripeness test, the challenged agency action must be "final," *Pernix Grp.*, 121 Fed. Cl. at 598, meaning that it "(1) marks 'the consummation of the agency's decision-making process,' *i.e.*, it must not be merely tentative or interlocutory, and (2) 'the action [is] one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Bennett v. Spear,* 520 U.S. 154, 177-78 (1997).

Plaintiffs' Complaint seeks judicial intervention in an ongoing agency investigation before the agency has concluded its decisionmaking process. This is exactly what that the ripeness doctrine exists to prevent. To hold otherwise would allow plaintiffs to halt an agency's investigation through "pre-enforcement litigation" and thereby "delay or impede effective enforcement by the agencies." *Dresser Indus., Inc. v. United States,* 596 F.2d 1231, 1236 (5th

13

Cir. 1979) (allegations that the SEC had exceeded its statutory authority to investigate were properly dismissed as unripe), *cert. denied*, 444 U.S. 1044 (1980).[5]

### B. Dismissal Will Not Cause "Hardship" Sufficient to Establish Ripeness

The "hardship" prong of the ripeness analysis addresses whether "sufficiently direct and immediate" harm would result from "*postponing* judicial review." *See Village of Bensenville v. FAA,* 376 F.3d 1114, 1120 (D.C. Cir. 2004) (emphasis in original, citations omitted). This is a high bar that generally is not met unless the challenged agency action "require[s] changes in present conduct on threat of future sanctions." *Assoc. of Am. Med. Colleges v. U.S*., 217 F.3d 770, 783 (9th Cir. 2000) (collecting cases).

None of the SEC's alleged investigative steps imposes any legal liability or obligations on the Plaintiffs. The SEC has not determined what action to take, if any, with regard to Plaintiffs' business. Plaintiffs' asserted voluntary cessation of staking does not meet the hardship standard as it was neither required by the SEC or implemented in response to a threat by the SEC. Dismissal of this action will simply force Plaintiffs to wait to present their defenses if and when the SEC takes final action. *See Pernix Grp.* 121 Fed. Cl. at 598-99 ("Being forced to wait for an agency to issue a decision is generally not enough to satisfy the hardship prong."); *U.S. Ass'n of Imps. of Textiles & Apparel v. U.S. Dep't of Commerce*, 413 F.3d 1344, 1350 (Fed. Cir. 2005) ("business uncertainty associated with awaiting a final decision" does not "turn a threshold agency decision into a final agency action ripe for review").[6]

---

[5] "Improperly intrud[ing] into the agency's decisionmaking process" would also "squander[] judicial resources," as it remains to be determined what if any claims the SEC will ultimately assert against Plaintiffs. *See Reliable Automatic Sprinkler*, 324 F.3d at 732; *accord Dresser*, 596 F.2d at 1236 (courts should not make an agency "defend against a plaintiff" the agency may ultimately decline to pursue).

[6] Plaintiffs' allegations of lost business and the costs incurred to comply with investigative subpoenas do not

14

In these circumstances dismissal is appropriate to permit the SEC to crystalize its decisionmaking and avoid premature adjudication. Deferring judicial review will not cause Plaintiffs any harm other than waiting for the agency to decide.

### III. PLAINTIFFS' HAVE NOT STATED A CAUSE OF ACTION UPON WHICH RELIEF CAN BE BASED

Because some courts have treated the APA's finality requirement as a part of an APA cause of action rather than as part of the sovereign immunity analysis, this Court could also dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6). *Compare Golden and Zimmerman, LLC v. Domenech*, 599 F. Supp. 2d 702, 707-12 (E.D. Va. 2009), *aff'd*, 599 F.3d 426 (4th Cir. 2010) (dismissing under Rule 12(b)(1) because "Frequently Asked Question" in agency's publication was not a final agency action under the APA and court therefore lacked subject matter jurisdiction) *with Versata Development Corp. v. Rea*, 959 F. Supp. 2d 912, 923-26 (E.D. Va. 2013), *aff'd*, 793 F.3d 1352 (Fed. Cir. 2015) (APA affords a cause of action, but dismissal required under Rule 12(b)(6) because agency's statutory interpretation was not a final agency action under the APA).

Plaintiffs are necessarily relying on the APA for a cause of action because they have not identified any other cause of action. *See Detroit Int'l Bridge Co. v. Government of Canada*, 133 F. Supp. 3d 70, 88 (D.D.C. 2015) (holding that the Declaratory Judgment Act did not create a

---

constitute a "hardship." It is well-established that "the expense and annoyance of litigation is 'part of the social burden of living under government.'" *Standard Oil*, 449 U.S. at 244 (internal citation omitted) (Court lacked jurisdiction over non-final action even though plaintiff faced "the expense and disruption of defending itself in protracted adjudicatory proceedings"); *see also Bell Atlantic Cash Balance Plan v. E.E.O.C.*, 976 F. Supp. 376, 381 (E.D. Va. 1997) ("While an investigation by the EEOC may reasonably cause a company like Bell Atlantic to incur some burdens, during the course of that investigation, such burdens are not indicia of final or reviewable agency action; they do not amount to the type of concrete, significant hardship that triggers judicial review.")

cause of action). Consequently, they must satisfy the APA to state a claim upon which relief can be based, but the lack of finality discussion above establishes that they cannot do so.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' Complaint.

Respectfully Submitted,

Melinda Hardy
Assistant General Counsel

Date: September 12, 2017

*/s/ Ann Rosenfield*
Ann Rosenfield
Senior Counsel
District of Columbia Bar No. 418316
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549
Telephone: (202) 551-4831
E-mail: Rosenfielda@sec.gov

CERTIFICATE OF SERVICE

   I hereby certify that on this 12th day of September, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

   Maurice B. VerStandig, Esq.
   The VerStandig Law Firm, LLC
   9812 Falls Road, #114-160
   Potomac, Maryland 20854
   Tel: (301) 444-4600
   Fax: (301) 576-6885
   Email: mac@mbvesq.com
   Counsel for Defendants YouStake, Inc.
   and Frank De George

            */s/ Ann Rosenfield*
            Ann Rosenfield
            Senior Counsel
            U.S. Securities and Exchange Commission