IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| YOUSTAKE, INC., *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 5:17-cv-65 |
| ) | |
| JAY CLAYTON, in his official capacity as ) | |
| Chairman of the United States Securities ) | |
| and Exchange Commission, *et al.* ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS**

Come now YouStake, Inc. ("YouStake") and Frank DeGeorge ("Mr. DeGeorge") (YouStake and Mr. DeGeorge being collectively known as the "Plaintiffs" and each being sometimes known as a "Plaintiff"), by and through undersigned counsel, pursuant to Local Rule 11(c), in opposition to the Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can be Granted (the "Motion to Dismiss" or "Motion") filed by the United States Securities and Exchange Commission (the "SEC") and Jay Clayton in his official capacity as Chairman of the SEC ("Mr. Clayton") (the SEC and Mr. Clayton being collectively known as the "Defendants" and each sometimes being known as a "Defendant"), and in support of said opposition state as follows:

I. **Introduction**

YouStake is a small business that has been paralyzed by a prolonged SEC investigation into activity outside the SEC's jurisdictional purview. Over the course of nearly eighteen (18) months, the Plaintiffs have expended substantial resources to comply with a governmental inquiry that places a Damoclean sword over their operational

abilities and that threatens incarceration should their compliance ever be failing. Throughout, the SEC has been unable to identify the regulation(s) it believes to bind YouStake's operations. And, in point of fact, the Financial Industry Regulatory Authority ("FINRA") has gone so far as to turn YouStake away from its registration process because the Plaintiffs' operations, contra the necessary predicate to the SEC's investigation, do not concern the sale of securities. [Complaint, at ¶¶ 29-35].

Now hailed into court in order to settle the SEC's jurisdiction, *vel non*, over YouStake, the Defendants have demurred by insisting they are immune from judicial review and endowed with the ability to endlessly pursue a corporate citizen over whose operations they lack regulatory authority. It is striking that the Defendants have taken this tact, as it shows both a wholesale disinclination to engage the questions presented by Plaintiffs' suit on their merits and an apparent belief that the SEC is a governmental agency free from judicial review even when it is allegedly operating outside the confines of its organic laws.[1]

Equally striking, however, is the objective meritlessness of the arguments proffered by the Defendants. The Motion to Dismiss seeks to relitigate whether the Administrative Procedure Act (the "APA") contains a waiver of sovereign immunity for all non-monetary proceedings, and not merely challenges to the findings of agency investigations that have formally concluded, despite clear and settled law adverse to the Defendants' position. Likewise, the Motion's protective invocation of subject-matter preclusion ignores wholly that Congress has never exempted the SEC's activities from

---

[1] The SEC was created by the Securities Exchange Act of 1934 to regulate "transactions in securities as commonly conducted upon securities exchanges and over-the-counter markets…" 15 U.S.C. § 78b.

2

judicial review. And the Motion's wanting theorization that this matter is not ripe for adjudication seems to miss entirely that the Plaintiffs are not challenging the factual findings of an SEC investigation that is still underway; the Plaintiffs are challenging the SEC's very jurisdiction to carry on that inquiry, a claim that necessarily ripened at the moment the SEC initiated an investigation allegedly beyond its authority.

To be clear: if the SEC indeed possesses regulatory jurisdiction to investigate the Plaintiffs, it is free to do so within the legal constrains that otherwise bind its activities, and no petition to this tribunal—or any other—may prematurely truncate that factual inquiry by means of declaratory judgment. But the Plaintiffs are not challenging the factual pursuit or result of an SEC investigation; they are challenging the SEC's alleged right to conduct an investigation in the first place. And that well-delineated distinction undermines each argument in favor of dismissal.

## II. Standard

As observed by the Supreme Court in considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, "What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

With regard to a motion for dismissal under Federal Rule of Civil Procedure 12(b)(1) where sovereign immunity is invoked, "The burden is on the plaintiff to prove that subject matter jurisdiction exists. . . . The United States has sovereign immunity from

3

suits absent an express waiver. Waivers of sovereign immunity must be 'strictly construed . . . in favor of the sovereign.'" *James v. United States*, 143 F. Supp. 3d 392, 394–95 (E.D. Va. 2015) (citations omitted).

**III.     Argument**

    **a.  The Plaintiffs' Declaratory Judgment Claim Is Not Barred by Sovereign Immunity**

The Defendants first argue that dismissal is appropriate because the Plaintiffs' declaratory judgment claim is barred by sovereign immunity. [Memo in Support of MTD, at 6–11]. This argument is based not only on a fundamentally flawed understanding of federal sovereign immunity, but also on an equally flawed understanding of the distinction between sovereign immunity and causes of action. Whether or not the Defendants' conduct constitutes "final agency action," Congress has clearly and unequivocally waived the federal government's sovereign immunity over the Plaintiffs' declaratory judgment claim.

In 1976, Congress amended the Administrative Procedure Act (the "APA") to include the following waiver of sovereign immunity:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.

As the U.S. Court of Appeals for the Fourth Circuit has explained, this amendment "waived the defense of sovereign immunity in such nonstatutory review cases in which nonmonetary relief is sought, and we have so held." *Hostetter v. United States*, 739 F.2d 983, 985 (4th Cir. 1984) (citing *Food Town Stores, Inc. v. EEOC*, 708

4

F.2d 920, 922 (4th Cir. 1983)). So long as "there is no preclusion-of-review statute and no special statutory review procedure provided, the APA states the policy that a person suffering legal wrong because of agency action should have judicial review thereof by way of any applicable form of legal action, including an action for injunctive relief." *Id*. Here, the Plaintiffs have brought an action for declaratory judgment—a quintessential claim for nonstatutory review of government conduct—and thus easily satisfy that standard.

The Defendants nevertheless argue that the waiver in § 702 applies only to actions arising under the APA, and that, because judicial review under 5 U.S.C. § 704 is limited to "final agency action," the waiver is further restricted to conduct satisfying that definition. [Memo in Support of MTD, at 8–9]. This argument is flatly inconsistent with *Hostetter*, which (correctly) applies the APA's waiver of sovereign immunity to claims arising from the allegedly unconstitutional and unlawful discharge of a federal employee—claims that did not arise under the APA, and that were not predicated on a finding of "final agency action." *See Hostetter*, 739 F.2d at 985–86.

But whereas *Hostetter* implicitly rebuts the Defendants' arguments, the U.S. Court of Appeals for the D.C. Circuit, in *Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006), expressly rejected them. To the Defendants' first argument, that court explained, "There is nothing in the language of the second sentence of § 702 that restricts its waiver to suits brought under the APA. The sentence waives sovereign immunity for '[a]n action in a court of the United States seeking relief other than money damages,' not for an action brought under the APA." *Id*. at 186; *see also Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) ("The APA's waiver of sovereign immunity applies to any

5

suit whether under the APA or not."). As that court explains, the legislative history of the 1976 amendments to the APA makes clear that Congress "expected the waiver to apply to nonstatutory actions, and thus not only to actions under the APA." *Trudeau,* 456 F.3d at 186 (citing S. Rep. No. 94-996, at 8 (1976), 1976 U.S.C.C.A.N. 6121, 6129). Thus, § 702 waives the federal government's sovereign immunity for any claim "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702. The instant declaratory judgment claim easily meets that definition.

As for the argument the Plaintiffs must still demonstrate "final agency action," *Trudeau* explains why that contention necessarily falls with the claim that the APA's immunity waiver applies only to claims arising under the APA:

> While [§ 702] does refer to a claim against an "agency" and hence waives immunity only when the defendant falls within that category, it does not use either the term "final agency action" or the term "agency action." Nor does the legislative history refer to either limitation. To the contrary, the House and Senate Reports' repeated declarations that Congress intended to waive immunity for "any" and "all" actions for equitable relief against an agency make clear that no such limitations were intended.

*Trudeau*, 456 F.3d at 187 (citations and footnotes omitted). In other words, "final agency action" is a prerequisite for stating a cause of action under § 704, but it is not necessary to trigger the immunity waiver in § 702 if the basis for the cause of action lies elsewhere. *See Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 621 (D.C. Cir. 2017) ("§ 702 waives Treasury's immunity regardless whether there is another adequate remedy under § 704 because the absence of such a remedy is instead an element of the cause of action created by the APA.").

And although the Fourth Circuit has never expressly held that the APA waiver applies without regard to the existence of "final agency action," every other federal Court

6

of Appeals to reach the matter agrees with the D.C. Circuit that it does. *See, e.g., Ala.-Cousahtta Tribe of Tex. v. United States*, 757 F.3d 484, 488–90 (5th Cir. 2014); *Treasurer of N.J. v. U.S. Dep't of the Treasury*, 684 F.3d 382, 397–99 (3d Cir. 2012); *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 775 (7th Cir. 2011); *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1344 (Fed. Cir. 2011); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005); *United States v. City of Detroit*, 329 F.3d 515, 520–21 (6th Cir. 2003) (en banc); *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989); *Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 474, 476 (8th Cir. 1988); *see also Hanson v. Wyatt*, 552 F.3d 1148, 1173 n.11 (10th Cir. 2008) (Gorsuch, J., concurring) ("Section 702 is a waiver of sovereign immunity, but we have not treated Section 704 as a limit on that waiver." (citation omitted)). *See generally* Richard H. Fallon, Jr., et al., *Hart and Wechsler's The Federal Courts and the Federal System* 902 (7th ed. 2015) (summarizing the scope of § 702).

The upshot of these consistent and long-standing decisions is simple: the SEC is simply incorrect that sovereign immunity is a defense to the Plaintiffs' declaratory judgment claim. And because Mr. DeGeorge and YouStake have not pled a cause of action under the APA, the "final agency action" requirement in 5 U.S.C. § 704 is also irrelevant. This Court therefore has subject-matter jurisdiction over the Plaintiffs' declaratory judgment claim, which is not barred by sovereign immunity.

### b. The Plaintiffs are Not Precluded from Collaterally Attacking the Defendants' Jurisdiction to Carry on an Investigation

Just as the Defendants have failed to note the case law cited above recognizing the expansive waiver of sovereign immunity in the APA, the Motion to Dismiss is also

7

disturbingly silent on the onslaught of recent case law holding that the SEC can be subject to collateral attack when carrying out its investigative or regulatory functions. Indeed, the Defendants rely heavily on a pair of rulings from the U.S. Court of Appeals for the Second Circuit, dating back some three and a half decades, to assert the proposition that SEC investigations are wholly immune from collateral attack. Yet such reliance is grossly misplaced in light of the clarity of intervening rulings—including one from the Supreme Court of the United States, just a few years ago—making clear the SEC may be hailed into court by a litigant collaterally attacking its core jurisdiction to carry on an investigation.

Specifically, the Motion cites extensively to *Sprecher v. Graber*, 716 F.2d 968 (2d Cir. 1983), and *Sprecher v Von Stein*, 772 F.2d 16, 18 (2d Cir. 1985), two cases which have seen their topical holdings atrophied and superseded with the passage of time. Indeed, the U.S. Supreme Court took up this very issue in 2010 when it analyzed judicial preclusion under the Securities Exchange Act of 1934 in the matter of *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010). Not surprisingly, following the *Free Enterprise Fund* decision in 2010, there does not appear to be so much as a single published opinion from any federal court citing either *Sprecher* case for the propositions asserted by the SEC herein.

In *Free Enterprise Fund*, the plaintiff brought suit seeking a declaratory judgment concerning the propriety of actions taken by a board appointed by the SEC. 561 U.S. at 477. In analyzing the express language of the Securities Exchange Act of 1934, Chief Justice Roberts, writing for the Court, observed, *inter alia*, "We agree with both courts

8

below that the statutes providing for judicial review of Commission action did not prevent the District Court from considering petitioners' claims." 561 U.S. at 489.

Specifically, the Court explained that the internal allowances of the Securities Exchange Act of 1934 are not the exclusive methodology for review of SEC actions:

> The Government reads § 78y as an exclusive route to review. But the text does not expressly limit the jurisdiction that other statutes confer on district courts. Nor does it do so implicitly. Provisions for agency review do not restrict judicial review unless the "statutory scheme" displays a "fairly discernible" intent to limit jurisdiction, and the claims at issue "are of the type Congress intended to be reviewed within th[e] statutory structure." Generally, when Congress creates procedures "designed to permit agency expertise to be brought to bear on particular problems," those procedures "are to be exclusive." But we presume that Congress does not intend to limit jurisdiction if "a finding of preclusion could foreclose all meaningful judicial review"; if the suit is "wholly collateral to a statute's review provisions"; and if the claims are "outside the agency's expertise." These considerations point against any limitation on review here.

561 U.S. at 489–90 (citations omitted).

Moreover, *Free Enterprise Fund* actually explains the absurdity of the SEC's position *sub judice*. Here, the SEC argues that the Plaintiffs' sole recourse is to disobey governmental subpoenas and challenge their validity in an enforcement proceeding. [Memo in Support of MTD, at 11 ("Because Plaintiffs could have challenged the SEC's investigation by declining to respond to their subpoenas, judicial review under the APA is precluded.")]. But, as the majority explained in *Free Enterprise Fund*, compelling a private actor to engage such wanton risk taking is contra to law and public policy:

> Alternatively, the Government advises petitioners to raise their claims by appealing a Board sanction. But the investigation of Beckstead and Watts produced no sanction, and an uncomplimentary inspection report is not subject to judicial review. So the Government proposes that Beckstead and Watts incur a sanction (such as a sizable fine) by ignoring Board requests for documents and testimony. If the Commission then affirms, the firm will win access to a court of appeals—and severe punishment should its challenge fail. We normally do not require plaintiffs to "bet the farm ... by

9

taking the violative action" before "testing the validity of the law," and we do not consider this a "meaningful" avenue of relief.

561 U.S. at 490–91 (citations omitted).

Indeed, what the Defendants neglects to mention in their Motion is that YouStake and Mr. DeGeorge, in failing to obey the subpoenas at issue, would be confronted not with an innocuous civil proceeding wherein jurisdictional merits could be debated sans consequences. No, rather, the proceeding that would follow Mr. DeGeorge and YouStake embarking upon the SEC's proposed route would be one where Mr. DeGeorge would face up to a year of incarceration should he not prevail. *See* 15 U.S.C. § 78u(c) ("Any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry or to produce books, papers, correspondence, memoranda, and other records, if in his power so to do, in obedience to the subpena of the Commission, shall be guilty of a misdemeanor and, upon conviction, shall be subject to a fine of not more than $1,000 or to imprisonment for a term of not more than one year, or both."). This would, of course, be the personification of "betting the farm."

To be sure, *Free Enterprise Fund* is not an outlier. The rationale expressed therein—that a collateral attack upon the jurisdiction of the SEC is permissible—is echoed elsewhere in recent decisions. Just last year, the U.S. District Court for the Northern District of Georgia, presented with similar evasive efforts on the part of the SEC, unequivocally held:

> [T]he Court finds that because Congress created a statutory scheme which expressly included the district court as a permissible forum for the SEC's claims, Congress did not intend to limit § 1331 and prevent Plaintiffs from raising their collateral constitutional claims in the district court. Congress could not have intended the statutory review process to be exclusive because it expressly provided for district courts to adjudicate not only constitutional issues but Exchange Act violations, at the SEC's option.

10

*Ironridge Glob. IV, Ltd. v. Sec. & Exch. Comm'n*, 146 F. Supp. 3d 1294, 1303 (N.D. Ga. 2015) (citing *Elgin v. Dep't of Treasury*, 567 U.S. 1, 9 (2012)).

Further, the underlying notion—that an agency's actions are subject to judicial review—has always proven true where the collateral attack is jurisdictional in nature. *See, e.g., Hanauer v. Reich*, 82 F.3d 1304, 1307 (4th Cir. 1996) ("But even when the statutory language bars judicial review, courts have recognized that an implicit and narrow exception to the bar on judicial review exists for claims that the agency exceeded the scope of its delegated authority or violated a clear statutory mandate.") (citing *Staacke v. U.S. Sec'y of Labor*, 841 F.2d 278, 281 (9th Cir.1988)); *First Nat'l Bank of Scotia v. United States*, 530 F. Supp. 162, 169 (D.D.C. 1982) ("It is of course true that 'even where the intent of Congress was to preclude judicial review, a limited jurisdiction exists in the court to review actions which on their face are plainly in excess of statutory authority . . . .'") (citation omitted).

Similarly, where the sole question raised in a collateral attack on jurisdiction is one of statutory interpretation, it is well settled that there is no purpose or economic interest in insisting the SEC exhaust its administrative purpose before judicial intervention occurs. *See, e.g.*, *Touche Ross & Co. v. S.E.C.*, 609 F.2d 570, 577 (2d Cir. 1979) ("While the Commission's administrative proceeding is not 'plainly beyond its jurisdiction,' nevertheless to require appellants to exhaust their administrative remedies would be to require them to submit to the very procedures which they are attacking.").

Here, the critical question is not what findings the SEC will make in carrying out its investigation of the Plaintiffs but, rather, whether the SEC has jurisdiction to investigate the Plaintiffs in the first place. This is precisely the sort of collateral attack

11

permitted by the *Hanauer* and *Touche Ross* Courts. And, in any event, the *Free Enterprise Fund* Court has made clear that SEC actions are subject to judicial review in the first instance, which jives with well-settled case law addressing judicial review in a general context. *See, e.g., Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 670 (1986) (noting there is a "strong presumption that Congress intends judicial review of administrative action."); *Ass'n of Data Processing Serv. Organizations, Inc. v. Camp*, 397 U.S. 150, 156–57 (1970) ("The statutes of Congress are not merely advisory when they relate to administrative agencies, any more than in other cases. To preclude judicial review under this bill a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it. The mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold review.") (quoting H.R.Rep. No. 1980, 79th Cong., 2d Sess., 41).

The SEC points to no statute that rebuts the foregoing well-established presumption. To the contrary, the cases cited *passim* show the SEC's actions are subject to judicial review, and that the SEC's actions may be collaterally attacked by a suit seeking a declaratory judgment. It thus becomes apparent that the Motion merits denial.

### c. This Matter is Ripe for Adjudication as it Concerns the Defendants' Jurisdiction to Investigate, and not the Factual Findings of an In-Progress Investigation

In a final effort to avoid judicial scrutiny of an allegedly rogue agency investigation, the Defendants insist that "Plaintiffs' challenge to the SEC's ongoing investigation is not ripe, as it is premature for the Court to consider the merits of any possible action the SEC may bring." [Memo in Support of MTD, at 13]. Yet again, however, the Defendants wholly miss the purpose of this suit—Mr. DeGeorge and

12

YouStake are challenging the SEC's jurisdiction to carry on an investigation in the first place; not the progress or outcome of that investigation.

For purposes of assessing ripeness, it is important the investigation implicated herein—one that is nearly a year and a half old, with no apparent signs of reaching any conclusion—not be conflated with its elusive (if not illusory) conclusion. In fact, the lack of a conclusion is very much the driving impetus for the instant controversy, as the pendency of the investigation is what is draining YouStake's resources and inhibiting the entity from carrying on normal business operations.

In blurring the authority of the SEC to carry on an investigation with the outcome of that investigation, the Defendants have presented the wrong ripeness analysis in this case. While ripeness is no doubt a prerequisite to the adjudication of a declaratory judgment suit, "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987) (citing *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568 (1985)). As explained by the Supreme Court of the United States, a matter is ripe for adjudication where "The issue presented … is purely legal, and will not be clarified by further factual development." *Thomas*, 473 U.S. at 581.

The "pure legality" standard has been well echoed by the Fourth Circuit in its assessment of the ripeness of a declaratory judgment suit:

> A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties. "The hardship prong is measured by the immediacy of the threat and the burden imposed on the [plaintiffs] who would be compelled to act under threat of enforcement of the challenged law." When

13

considering hardship, we may consider the cost to the parties of delaying judicial review.

*Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (citations omitted). This Court has cited the *Miller* holding, for the stated proposition, in the context of a declaratory judgment proceeding. *See WTGD 105.1 FM v. SoundExchange, Inc.*, 88 F. Supp. 3d 580, 584 (W.D. Va. 2015).

Here, the inquiry for which a declaration is sought meets the *Thomas* and *Miller* standard: it is purely legal, it will not be clarified by further factual development, and the Plaintiffs will be compelled to act under the threat of enforcement if a declaratory judgment is not entered.

Yet even if one were to assume that the finality and hardship rigors suggested by the SEC are prerequisites, both amply exist *sub judice*. Determining finality is a question of substance and not an inquiry into hyper-technical form: "The cases dealing with judicial review of administrative actions have interpreted the 'finality' element in a pragmatic way." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).

The challenge in this case is to a final decision: the commencement and carrying on of an investigation into an entity over which, the Plaintiffs allege, the SEC lacks jurisdiction. The decision being challenged is not one resulting from the investigation; it is the decision to carry on the investigation. And that decision has reached a point of finality in every normative construct of the word, placing it well within the purview of *Abbott Laboratories*. Nothing that transpires in the investigation going forward could bear upon the factual record relevant to the jurisdictional question undergirding the Plaintiffs' claim.

Moreover, the hardship rigor is one readily subsumed within the doctrine that purely legal disputes ought to be resolved when properly presented. "Rather than asking, negatively, whether denying relief would impose hardship, courts will do well to ask, in a more positive vein, whether granting relief would serve a useful purpose, or, put another way, whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest." *Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 693 (1st Cir. 1994) (citing *Step–Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 647 (3d Cir. 1990)).

Here, a legal determination of the SEC's jurisdiction, *vel non*, over the Plaintiffs will instruct whether or not the resources of all parties hereto are to be further expended on an investigation YouStake and Mr. DeGeorge maintain to be wholly inappropriate and devoid of legal underpinnings. A determination will spare those resources, relieve YouStake of the paralyzing brutality of endeavoring to operate while under SEC investigation, and otherwise permit this matter to proceed with topical clarity. These are most certainly "useful purposes." And, per *Miller*, a legal determination will instruct whether or not the Plaintiffs must go forward acting under the constant threat of enforcement.

Yet the hardship rigor, even if viewed in the inverse of how presented by *Step–Saver Data Systems, Inc.* and its progeny, is still clearly satisfied: The SEC has suggested—in the Motion, no less—that the Plaintiffs' remedy is to disobey subpoenas and, in so doing, risk incarceration. If the investigation is to continue, future subpoenas will follow, targeted at Mr. DeGeorge or other officers of YouStake. And thus the continued threat of time confined to a penitentiary (to say nothing of the expenses of

15

complying with the SEC's potentially *ultra vires* investigative demands) will loom large, leaving the Plaintiffs between Scylla and Charybdis.

The federal declaratory judgment statute exists entirely to facilitate adjudication of pure questions of law in situations like this one. The SEC has taken a definitive position: by carrying on an investigation, it maintains it has jurisdiction over YouStake. And the Plaintiffs have taken a definitive position: Their business is outside the SEC's jurisdiction. No facts need be found to adjudicate the propriety of the respective parties' positions, as the question is purely legal in nature. And resolving that question, at this juncture, will potentially relieve the Plaintiffs of the ongoing threat of incarceration for noncompliance, the Damoclean sword that stunts their business affairs during an SEC investigation, and the precious resources expended in defense of that investigation, while also potentially relieving the Defendants of their own precious resources expended in pursuit of an ill-advised inquiry. Simply put, there is no jurisdictional, statutory, doctrinal, or prudential reason *not* to decide the question presented at this juncture—and the Motion to Dismiss offers none.

IV. **Conclusion**

WHEREFORE, the foregoing considered, YouStake, Inc. and Frank DeGeorge respectfully pray this Honorable Court deny the Motion and afford such other and further relief as may be just and proper.

**[SIGNATURE ON FOLLOWING PAGE]**

16

Date: September 25, 2017            Respectfully submitted,

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Virginia Bar No. 81556
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, MD 20854
Phone: 301-444-4600
Facsimile: 301-576-6885
E-mail: mac@mbvesq.com
*Counsel for YouStake, Inc.*
*and Frank DeGeorge*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of September, 2017, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties authorized to receive electronically Notices of Electronic Filing.

By:   /s/ Maurice B. VerStandig
Maurice B. VerStandig

17

Case 5:17-cv-00065-MFU   Document 8   Filed 09/25/17   Page 17 of 17   Pageid#: 62